IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| EXTERRAN ENERGY SOLUTIONS, L.P. | § § § | |
| **Plaintiff,** | § § | |
| **vs.** | § § | CIVIL ACTION NO. 09-1463 (JURY DEMANDED) |
| ACE AMERICAN INSURANCE COMPANY | § § § | |
| **Defendant.** | § § § | |

## FIRST AMENDED COMPLAINT

Plaintiff Exterran Energy Solutions, L.P., on behalf of it and its affiliates and subsidiaries, ("Exterran") files this its first amended complaint against defendant Ace American Insurance Company ("ACE") and alleges as follows:

## I.
## INTRODUCTION

1.      Exterran brings this action against its insurer ACE for breach of contract, violations of the Texas Insurance Code, and common law bad faith.  ACE issued an "all risk" insurance policy to Exterran beginning December 19, 2006 and ending December 19, 2007. During the policy period, on May 15, 2007, Exterran suffered a complete loss to Reactors at its facility in the Hamriyah Free Zone, Sharjah, United Arab Emirates ("Hamriyah Facility"). The cause of the loss was overheating.  Exterran promptly notified ACE of this loss and made a claim.  Nearly two years after being notified of the loss, ACE denied any obligation to pay the claim, which denial triggered this action.

## II.
## JURISDICTION AND VENUE

2.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332. The matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different states.

3.      Venue is proper in the Southern District of Texas, Houston Division, under 28 U.S.C. § 1391, inasmuch as defendant ACE transacts business in this district and division. In addition, events that form the basis of these claims took place in this district and division.

## III.
## THE PARTIES

4.      Plaintiff Exterran Energy Solutions, L.P., formerly known as Hanover Compression Limited Partnership, is a Delaware limited partnership duly authorized to conduct business in Texas and maintains its principal place of business in Harris County, Texas.

5.      Defendant ACE American Insurance Company is a corporation organized and existing under the laws of the Commonwealth of Pennsylvania, with its principal place of business in Philadelphia, Pennsylvania. ACE is licensed to do business in the State of Texas and can be served through its registered agent for service of process, Robin M. Mountain, 6600 Campus Circle Drive East, Suite 300, Irving, Texas 75063.

## IV.
## FACTUAL ALLEGATIONS

A.      **THE POLICY**

6.      For the period December 19, 2006 to December 19, 2007, Exterran was insured under an "all-risk" insurance policy No. N01939385 that was issued by ACE (the "Policy"). A true and correct copy of the Policy is attached as Exhibit A and is incorporated herein. While the policy was issued in the name of Hanover Compression Limited Partnership, this entity changed

its name to Exterran Energy Solutions, L.P. on August 20, 2007.  Exterran holds all rights under the Policy and all claims asserted in this lawsuit.

7.    The Policy provided coverage "worldwide, except for Cuba, Iran, Iraq, Libya, North Korea, Sudan, Liberia, Sierra Leone, Angola, Syria, Burma (Myanmar) and other USA trade embargoed countries." Exhibit A at 76 (Endorsement No. 29).

8.    Under the Policy, ACE promised to cover Exterran for loss to ". . . buildings, tanks and structures of every description, and all contents therein and property of every description upon the premises as now or hereafter constituted; all whether the Insured's own or held in trust or on consignment or on commission or held in storage or for repairs or sold but not delivered or removed; all comprising a part of or appertaining to the operation of the Insured's locations and facilities . . . ." *Id.* at 29 (Onshore Property).

9.    ACE promised to insure this property "against all risks of direct physical loss or damage occurring during the period of this Policy from any external cause, except as hereinafter excluded or limited." *Id.* at 18 (p. 1 of STAR 200 General Conditions).

10.    The Policy provides limits of $100,000,000 per occurrence.  *Id.* at 15 (Declarations).

11.    The Policy defines occurrence as "an event or a continuous exposure to conditions, which causes direct physical loss or damage or destruction to property insured.  All damages or destructions resulting from a common cause, or from exposure to substantially the same conditions, shall be deemed to result from one 'occurrence' except as modified herein." *Id.* at 23 (p. 6 of Star 200 General Conditions).

12.    Exterran has satisfied, shall be deemed to have satisfied, or have been or shall be relieved from satisfying, by operation of law or by virtue of ACE's conduct, all terms and

conditions of the Policy, including without limitation those relating to payment of premiums, notice, and cooperation, and are entitled to the full benefit of said insurance.

**B.    THE LOSS OF THE REACTORS**

13.    Exterran manufactures and provides support and services to the energy industry for a wide range of equipment, plants, and systems.  In 2005, Exterran entered into a contract with Qatar Shell GTL Limited ("Shell") to supply certain equipment, including twelve reactors, to Shell.  Exterran builds these complex reactors at its Hamriyah Facility.

14.    During the construction of the reactors at issue, the reactors must be subject to heat treatment in a large furnace.

15.    On May 15, 2007, during the heat treatment of Reactor Nos. 1R3029 bottom and 1R3028 Top (the "Reactors"), Exterran personnel heard a loud and unexpected noise inside the furnace and saw that the furnace doors had bowed outwards (the "May 15, 2007 Accident").

16.    The May 15, 2007 Accident was fortuitous.

17.    After shutting down the heating elements in the furnace to ensure all parameters were within requirements, Exterran turned the heating elements back on to initiate the cool down command.  Upon completion of the cool down process, Exterran personnel opened the doors and found that the Reactors were a total loss, which could not be repaired.

18.    The May 15, 2007 Accident, which caused the damage to the Reactors, was caused by the overheating of the Reactors.

19.    Because the damaged Reactors could not be repaired, Exterran took steps to replace them.

20.    The costs to replace the damaged Reactors are covered under the Policy.

21.    Exterran also sustained additional losses as a result of the May 15, 2007 Accident that are covered under the Policy, and Exterran seeks the recovery of these losses in this lawsuit.

## C.    THE CLAIM

22.    Exterran timely provided notice of the loss to ACE in accordance with the Policy's requirements.

23.    ACE appointed Crawford & Company International, Inc. ("Crawford & Company") in Dubai to investigate the loss. Crawford & Company in turn hired Lucius Pitkin Inc. ("Lucius Pitkin") to "carry out a detailed root cause and material failure analysis."

24.    Lucius Pitkin describes itself as "a multi-disciplinary staff of specialists in the fields of mechanical, metallurgical, structural and non-destructive engineering, in fracturing mechanics, stress analysis, computer data acquisition and software assessment."

25.    Exterran provided to ACE and its agents all available and relevant equipment, documents and information that ACE requested over the course of almost two years and through numerous and duplicative requests.

26.    Exterran provided documents and information to ACE in several claims submissions, including, but not limited to, on June 13, 2007, July 18, 2007, August 27, 2007, September 23, 2007, February 4, 2008, April 15, 2008, June 11, 2008, and July 16, 2008.

27.    Exterran also provided access to its facilities to ACE and its agents on several occasions. ACE and its agents were given access to Exterran's personnel, files, and equipment. Exterran provided this open access whenever Ace made requests for access, including on July 26, 2007, July 29, 2007, August 7, 2007, and a multi-day site visit during the week of January 6, 2008.

28.    In addition, Exterran provided metallurgical samples at the request of Lucius Pitkin.

29.    Lucius Pitkin finally determined that "the reactor sections were damaged due to overheating." The Policy covers, and does not exclude, losses caused by overheating.

30.    More than one year after the May 15, 2007 Accident, in June 2008, ACE hired a second consultant, Engineering, Design & Testing, to conduct a root cause analysis. Even though ACE's agents had previously viewed the Programmable Logic Controller ("PLC") based control panel, ACE requested that Exterran send the PLC based control panel to its new consultant for testing as a final requirement to concluding ACE's investigation of Exterran's claim.

31.    Exterran offered to make the PLC based control panel available on-site for inspection. ACE chose not to inspect the PLC based control panel, and elected to drop its final requirement of testing the control panel.

32.    Subsequently, on August 19, 2008, more than a year after it had notice of the May 15, 2007 Accident and resulting loss, ACE, through Crawford & Company, advised Exterran for the first time that it was taking the position that two exclusions in the Policy "may potentially be applicable" to Exterran's loss, depending on the final outcome of the investigation.

33.    Thereafter, Engineering Design & Testing sent two additional sets of requests for information to Exterran. Exterran responded to Engineering Design & Testing's questions.

34.    No new or previously undisclosed information was requested or exchanged between Exterran and Engineering Design & Testing.

35.    At various points during ACE's investigation, ACE's agents told Exterran that they were satisfied with the level of Exterran's cooperation. ACE's consultant also stated he was pleasantly surprised at how much information Exterran had been able to gather and organize in advance of the site visits.

36.    On March 16, 2009, twenty-two months after the loss, ACE, through correspondence from its agent Starr Technical Risks Agency, Inc., denied Exterran's claim (the

"March 16, 2009 Denial"). The March 16, 2009 correspondence is attached as Exhibit B and incorporated herein. The March 16, 2009 Denial rests on ACE's determination that, even though the Reactors were damaged through overheating, Exterran's claim is excluded from coverage because of "errors or omissions in planned specification design or errors in processing."

37.    The March 16, 2009 Denial relies on Engineering Design & Testing's claim that "a design flaw" caused the damage to the Reactors. *Id.* at 3.

38.    Exterran thus brings this lawsuit against ACE for its breach of contract, its improper handling of the claim, and its bad faith investigation geared toward denial.

## V.
## CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT

39.    Exterran repeats and re-alleges the allegations set forth in Paragraphs 1 through 38 and further alleges as follows:

40.    The Policy is a valid and enforceable contract between Exterran and ACE. ACE agreed to cover all risks of damage to Exterran's property unless the risk was specifically excluded in the contract.

41.    ACE has breached and continues to breach the contract by refusing to pay Exterran's valid claim for the destroyed Reactors, along with the related losses.

42.    Overheating damaged the Reactors.

43.    Nothing within the Policy excludes loss from overheating.

44.    As a direct and proximate result of the foregoing breach of contract, Exterran is entitled to direct, indirect, consequential and incidental damages, and interest, according to proof at trial.

45.     Exterran has satisfied, shall be deemed to have satisfied, or has been or shall be relieved from satisfying, by operation of law or by virtue of ACE's conduct, all conditions precedent.

## COUNT II
## GOOD FAITH AND FAIR DEALING

46.     Exterran repeats and re-alleges the allegations set forth in Paragraphs 1 through 38 and further alleges as follows:

47.     By entering a contract to provide insurance coverage to Exterran, ACE took on a special relationship with Exterran. As a result of this special relationship, ACE owes Exterran a duty of good faith and fair dealing.

48.     ACE breached its duty through the facts as outlined above, and in the following particulars, among others:

> (A)     By failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of Exterran's claims;
>
> (B)     In failing to reasonably respond to Exterran after a covered loss was presented to ACE;
>
> (C)     By denying payment when ACE knew or should have known that liability was reasonably clear;
>
> (D)     By failing to reasonably and promptly respond to Exterran's inquiries concerning the loss, the claims handling, and ACE's investigation;
>
> (E)     By failing to conduct a reasonable investigation of the claim; and
>
> (F)     Any and all other acts or omissions that may be uncovered during the discovery phase and/or trial of this lawsuit.

49.     Each breach of the duty of good faith and fair dealing by ACE proximately caused damages to Exterran and Exterran seeks to recover its damages for these breaches.

## COUNT III
## VIOLATIONS OF CHAPTER 541

50.    Exterran repeats and re-alleges the allegations set forth in Paragraphs 1 through 38 and further alleges as follows:

51.    ACE violated Texas Insurance Code Chapter 541 through its practices of stalling, misrepresenting coverage, improperly investigating the facts, and delaying payment of claims. ACE violated those provisions in the following particulars, among others:

(A)    By misrepresenting to Exterran material facts or policy provisions relating to the coverage at issue;

(B)    By failing to attempt in good faith to effectuate a prompt, fair and equitable settlement of Exterran's claims as soon as liability had become reasonably clear;

(C)    In failing to respond to Exterran after a covered loss was presented to ACE;

(D)    By failing to promptly provide Exterran a reasonable explanation of the basis in the policy, in relation to the facts or applicable law, for ACE's denial of coverage;

(E)    In failing within a reasonable time to affirm or deny coverage of the claim to Exterran;

(F)    In failing within a reasonable time to submit a reservation of rights letter to Exterran;

(G)    By failing to conduct a reasonable investigation with respect to Exterran's claim;

(H)    By failing to state a material fact necessary to make other statements made not misleading;

(I)    By making statements in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact;

(J)    By making a material misstatement of law; and

(K)    Any and all other acts or omissions which may be uncovered during the discovery phase and/or trial of this lawsuit.

DB1/62950880.1

52.    ACE's violations of Chapter 541 were the producing cause of Exterran's damages.

## COUNT IV
## VIOLATIONS OF CHAPTER 542

53.    Exterran repeats and re-alleges the allegations set forth in Paragraphs 1 through 38 and further alleges as follows:

54.    Exterran had a claim under the Policy.

55.    Exterran gave proper notice of its claim to ACE.

56.    ACE is liable for the claim, and ACE violated Texas Insurance Code Chapter 542 through its failure to promptly acknowledge, investigate and pay Exterran's claims.

57.    ACE's conduct and delay obligates it to pay, in addition to the amount of the claim, 18 percent per year of the amount of the claim as additional damages, together with reasonable attorneys' fees.

## COUNT V
## EXEMPLARY DAMAGES

58.    Exterran repeats and re-alleges the allegations set forth in Paragraphs 1 through 38 and further alleges as follows:

59.    Because of ACE's actionable conduct, Exterran has suffered actual damages in an amount within the jurisdictional limits of this Court.

60.    On information and belief, ACE's breach of its duty of good faith and fair dealing in the handling of Exterran's claim was fraudulent, intentional, grossly negligent, or committed with malice as such terms are defined in Chapter 41 of the Texas Civil Practices & Remedies Code. In refusing to indemnify Exterran for its property damages, ACE knew that Exterran

would incur and continue to incur substantial expenses despite the fact that it had insurance coverage under the Policy.

61.    Exterran seeks exemplary damages in an amount that will inhibit and deter ACE from engaging in this type of claims-handling misconduct in the future.

62.    On information and belief, ACE's unlawful acts and practices under the Texas Insurance Code were committed knowingly as defined in Section 541.002, entitling Exterran to multiple damages.

## COUNT VI
## ATTORNEYS' FEES

63.    Exterran was forced to retain outside counsel to pursue these claims.   Under Chapters 541 and 542 of the Texas Insurance Code, and Chapter 38 of the Texas Civil Practice & Remedies Code, all of Exterran's reasonable and necessary attorneys' fees may be recovered through trial and any appeals.   Exterran has satisfied all conditions precedent to the recovery of legal fees, expenses, and interest.

## VI.
## JURY DEMAND

64.    Exterran Energy Solutions, L.P. demands a trial by jury on all issues so triable.

## VII.
## PRAYER

THEREFORE, Exterran Energy Solutions, L.P. requests that:

(a)    Defendant ACE American Insurance Company be cited to appear and answer these claims;

(b)    Judgment be entered against Defendant in favor of Plaintiff for:

    (1)    Plaintiff's actual damages;

    (2)    multiple and punitive damages;

    (3)    pre-judgment and post-judgment interest at the maximum allowable rate;

(4)    prompt payment violations at the rate of eighteen percent per year;

(5)    reasonable attorneys' fees and expenses;

(6)    all costs in prosecuting this litigation; and

(7)    any additional relief, legal and equitable, general or special, to which Plaintiff may be justly or equitably entitled.


Dated:  May 28, 2009                                    Respectfully submitted,


Lucas T. Elliot
(Attorney-In-Charge)
State Bar No. 06534150
Federal I.D. No. 12757
1000 Louisiana Street, Suite 1300
Houston, Texas  77002
Telephone:  713.890.5000
Facsimile:  713.890.5001
lelliot@morganlewis.com

*Attorneys For Plaintiff*
*Exterran Energy Solutions, L.P.*


OF COUNSEL
MORGAN, LEWIS & BOCKIUS LLP

David A. Luttinger, Jr.
S.D.N.Y. Federal I.D. No. DL-3186
101 Park Avenue
New York, New York  10178-0060
Telephone:  212.309.6000
Facsimile:  877.432.9652
dluttinger@morganlewis.com

13

Claire Swift Kugler
State Bar No. 00797530
Federal I.D. No. 21675
ckugler@morganlewis.com
Heather Kubiak
State Bar No. 24001266
Federal I.D. No. 23020
hkubiak@morganlewis.com
1000 Louisiana Street, Suite 1300
Houston, Texas  77002
Telephone:  713.890.5000
Facsimile:   713.890.5001